IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

vs.                                          Case Nos.:   4:09cr26/RH/CAS
                                                          4:11cv411/RH/CAS

VINCENT VIDAL MITCHELL

---

## <u>REPORT AND RECOMMENDATION</u>

This matter is before the court upon Defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (doc. 76).  The Government filed a response (doc. 80) and Defendant filed a supplement (doc. 83).  The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).  After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied.  *See* Rules Governing Section 2255 Cases 8(a) and (b).

# PROCEDURAL BACKGROUND[1]

Defendant was charged in a three count indictment with distributing more than five grams of cocaine base ("Count One"), being a convicted felon in possession of a firearm ("Count Two"), and possession of a firearm in furtherance of a drug trafficking crime ("Count Three") (doc. 1).  One week after the indictment was returned, the Government filed a Notice of Intent to seek enhanced penalties due to Defendant's eight prior felony convictions (doc. 14).

On May 20, 2009, the defense moved to continue the trial due to Defendant's dialysis treatments, which required the use of "very strong pain-killing drugs" (doc. 16). Trial was rescheduled for August 17, 2009 (doc. 17), but Defendant entered a plea of guilty pursuant to a written plea agreement and statement of facts on July 24, 2009 (docs. 21–24).

At the plea colloquy, when the court asked Defendant if he had ever been treated for a mental or psychological problem, he acknowledged that he had been treated for depression "some years ago" (doc. 38 at 4).  Defendant also indicated that he felt depressed due to his health (*id.* at 5). Counsel explained to the court at that point that his client underwent dialysis every other day which required "some fairly powerful painkillers," and that Defendant had last completed dialysis the previous afternoon so he was "still a little bit under the effects of that as well as just basic health problems"

---

[1]Detailed statements of facts describing the offense conduct are set forth in the statement of facts (doc. 22) and Defendant's Presentence Investigation Report (doc. 61) and will be set forth herein only as necessary.

(*id*.).  Defendant, who appeared in a wheelchair, explained his health to the court as follows:

> My kidneys just don't work at all, and they have to – I can't urinate.  And high blood pressure, stomach hurts, chest pains, and hypertension. Probably about 20 – probably about 28 pills a day, all medical.

(doc. 38 at 5).  Defendant explained that he underwent dialysis every other day, including the day before the hearing (*id*. at 6).  The court asked Defendant to explain how he was feeling at the time, and Defendant said that he felt "exhausted from the dialysis machine" and "worn out" and "drowsy" from all the medications (*id*.).  The court acknowledged Defendant's situation and explained to him that he needed to be alert and energetic enough to be able to participate in the hearing and tell the court about the case (*id*)  It noted that in light of the state of Defendant's health, it might not be easy to find a time when Defendant was feeling "good and bright and perky," but the court wanted to find the best possible time for the hearing, which was why it was scheduled for the late morning on a day when there was no dialysis (*id*.).  Counsel offered the court some of his observations of Defendant's physical condition and stated that he had seen his client worse than he was at that time but that he had not seen him better (*id*. at 7).  Counsel also noted that it had been difficult to communicate with Defendant because it seemed to exhaust him to answer questions, but Defendant's thought patterns were otherwise normal (*id*.).  The court proceeded with the hearing after instructing Defendant "If you get worn out and you're not fully focused, you tell me, okay?" (*id*. at 7–8).

Defendant admitted that the facts as set forth in the statement of facts were correct (doc. 38 at 12).  He specifically admitted that 81 grams of powder cocaine and 24 grams of crack recovered by law enforcement belonged to him as well as a loaded .380-caliber handgun (*id.* at 13–14).   The court explained that Defendant faced a mandatory sentence of ten years to life on Count One, a mandatory sentence of fifteen years to life on Count Two and a mandatory sentence of five years imprisonment on Count Three (*id.* at 15–17).  Defendant indicated that he understood (*id.*).  The court noted that whether these sentences would run consecutive or concurrent was not clear under the case law, but told Defendant that he faced at least a fifteen year prison term (*id.* at 17–19).  Defendant acknowledged that he understood (*id.* at 19).  The court explained how Defendant might get a lower sentence if he rendered substantial assistance, and again Defendant affirmed that he understood (*id.* at 19–21).

Through the remainder of the plea colloquy Defendant appeared to have difficulty hearing the questions posed of him, as counsel occasionally repeated the questions or Defendant's answers to the court.  However, Defendant never attempted to stop the proceedings or indicate he was too fatigued to continue.  In accepting Defendant's guilty plea, the court found as follows:

> Mr. Mitchell is alert and intelligent and capable of understanding these charges and the discussion here today.  He has been slow with some of the responses, and Mr. Clark has repeated some of those, some of the questions, but the substance of the responses has been appropriate to the question.  And it's clear that Mr. Mitchell doesn't hear as well as some people and works through this information a little more slowly than some, but he seems to be working through it and understanding the discussion, and that's my finding.

(Doc. 38 at 29).  The court set sentencing for October 14, 2009 (*id.* at 30).

On August 11, 2009, the defense filed a motion for medical evaluation due to counsel's concern that Defendant might be too physically ill to be sentenced to a term of incarceration (doc. 28).  After a telephonic hearing, the court entered an order of commitment for a competency evaluation for evaluation not only of "ordinary psychiatric issues but also serious medical conditions that could affect competency" (doc. 32 at 2). It specifically directed that the examination determine whether Defendant was suffering from a condition rendering him mentally incompetent to proceed and whether he was insane at the time of the offense (*id.*).

Sentencing was continued due to a deterioration in Defendant's condition and a resulting delay in obtaining the court-ordered evaluation (*see* doc. 34, 35).  On December 15, 2009, the court entered an order delaying Defendant's return to this district, in which it indicated that although the competency report had not been completed, attorneys for both parties expected it to conclude that Defendant was not competent to proceed (doc. 42).  The court noted that transporting Defendant would disrupt his treatment and serve no purpose and that Defendant waived his right to be present for the competency hearing (*id.*).

The Forensic Psychological Report was filed with the court on January 21, 2010 (doc. 43).  It concluded, contrary to what counsel had expected, that Defendant was competent to proceed, that he had no psychological or cognitive impairment, but rather was feigning and/or exaggerating symptoms, and that Defendant was sane at the time of the offense (*id.* at 2, 8).  After a telephonic conference on January 28, 2010, the court

entered an order directing that Defendant be returned to the district for a competency hearing and sentencing (doc. 47).  Defendant subsequently moved to waive his appearance at further court proceedings (doc. 50).  The court granted the motion and set the competency and sentencing hearings for video conference (doc. 51).

The Presentence Investigation Report ("PSR") held Defendant accountable for 629.12 kilograms of marijuana equivalent with a corresponding base offense level of 26 (doc. 61, PSR ¶ 18).  Defendant did not receive a four level adjustment pursuant to § 2K2.1(b)(6) because he was also charged with a violation of 18 U.S.C. § 924(c) (PSR ¶ 19).  Defendant's adjusted offense level with respect to Counts One and Two was 26 and after an acceptance of responsibility adjustment his total offense level based on these calculations was 23 (PSR ¶¶ 23–25).  However, because Defendant was subject to an enhanced sentence under 18 U.S.C. § 924(e), his offense level became 34 and his total offense level was 31 (PSR ¶¶ 26–30).  Defendant's criminal history category was VI (PSR ¶ 48), and the applicable advisory guidelines range on Counts One and Two was 188 to 235 months (PSR ¶ 84).  Defendant's conviction on Count Three was subject to a five year consecutive sentence (PSR ¶ 31).

The competency hearing and sentencing were conducted on April 15, 2010 (doc. 71).  The court found, based on the report from the BOP, that Defendant was competent to proceed (*id.* at 4), and it overruled the Government's objection to Defendant's receipt of the acceptance of responsibility adjustment (*id.* at 7–12, 31).  The defense asked that Defendant be sentenced to concurrent, rather than consecutive, statutory minimum mandatory terms due to his medical condition (*id.* at 17–18).  The Government took the

position that Defendant had previously been treated with leniency by the state court

system for the same reason, but, despite his medical condition, he had chosen to

continue his "life of crime" and thus not only should he not receive "credit" again in that

regard, but also he should receive an upward departure (*id.* at 22–24).   The court

imposed a sentence of 240 months imprisonment, which was comprised of 180 months

on Counts One and Two, to run concurrently, and 60 months on Count Three to run

consecutively (*id.* at 25, 30).

 Defendant appealed, and counsel filed a brief pursuant to Anders v. California,

386 U.S. 738 (1967).  The Eleventh Circuit's independent review of the entire record

revealed no arguable issues of merit, it granted counsel's motion to withdraw and it

affirmed Defendant's conviction and sentence (doc. 75 at 5).

 Defendant timely filed the instant § 2255 motion raising four separate claims of

ineffective assistance of counsel.  The Government opposes the motion in its entirety.

## LEGAL ANALYSIS

### General Legal Standards

 Because collateral review is not a substitute for direct appeal, the grounds for

collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner

is entitled to relief under section 2255 if the court imposed a sentence that (1) violated

the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded

the maximum authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28

U.S.C. § 2255(a); McKay v. United States, 657 F.3d 1190, 1194 n. 8 (11th Cir. 2011).

"Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights

and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal.  Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012); United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.  Nyhuis, 211 F.3d at 1343 (quotation omitted).  Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.  Sanders v. United States, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred.  Lynn, 365 F.3d at 1234–35; Bousley v. United States, 523 U.S. 614, 621 (1998);  McKay v. United States, 657 F.3d 1190, 1195 (11th Cir. 2011).  An issue is "'available' on direct

appeal when its merits can be reviewed without further factual development."  Lynn, 365

F.3d at 1232 n. 14 (quoting Mills, 36 F.3d at 1055).   Absent a showing that the ground

of error was unavailable on direct appeal, a court may not consider the ground in a

section 2255 motion unless the defendant establishes (1) cause for not raising the

ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is,

alternatively, that he is "actually innocent."  Lynn, 365 F.3d at 1234; Bousley, 523 U.S.

at 622 (citations omitted).  To show cause for procedural default, a defendant must

show that "some objective factor external to the defense prevented [him] or his counsel

from raising his claims on direct appeal and that this factor cannot be fairly attributable

to [defendant's] own conduct."  Lynn, 365 F.3d at 1235.  A meritorious claim of

ineffective assistance of counsel can constitute cause.  See Nyhuis, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct

appeal and are properly raised by a § 2255 motion regardless of whether they could

have been brought on direct appeal.  Massaro v. United States, 538 U.S. 500, 503

(2003); see also United States v. Patterson, 595 F.3d, 1324, 1328 (11th Cir. 2010).  The

benchmark for judging a claim of ineffective assistance of counsel is "whether counsel's

conduct so undermined the proper functioning of the adversarial process that the trial

cannot be relied on as having produced a just result."  Strickland v. Washington, 466

U.S. 668, 686 (1984).  To show a violation of his constitutional right to counsel, a

defendant must demonstrate both that counsel's performance was below an objective

and reasonable professional norm and that he was prejudiced by this inadequacy.

Strickland, 466 U.S. at 686; Williams v. Taylor, 529 U.S. 362, 390 (2000); Darden v.

United States, 708 F.3d 1225, 1228 (11th Cir. 2013).  Strickland's two part test also

applies to guilty pleas.  Hill v. Lockhart, 474 U.S. 52, 58 (1985).  A defendant will be

required to show that but for counsel's errors, he would not have pleaded guilty and

would have instead insisted on proceeding to trial.  *Id.* at 59.  In applying Strickland, the

court may dispose of an ineffective assistance claim if a defendant fails to carry his

burden on either of the two prongs.  Strickland, 466 U.S. at 697; Brown v. United States,

720 F.3d 1316, 1326 (11th Cir. 2013).

In determining whether counsel's conduct was deficient, this court must, with

much deference, consider "whether counsel's assistance was reasonable considering

all the circumstances." Strickland, 466 U.S. at 688; *see also* Dingle v. Sec'y for Dep't of

Corr., 480 F.3d 1092, 1099 (11th Cir. 2007).  Reviewing courts are to review counsel's

performance in a highly deferential manner and "must indulge a strong presumption that

counsel's conduct fell within the wide range of reasonable professional assistance."

Hammond v. Hall, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting Strickland, 466 U.S. at

689); *see also* Chandler v. United States, 218 F.3d 1305, 1315–16 (11th Cir. 2000)

(discussing presumption of reasonableness of counsel's conduct); Lancaster v.

Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not

entitled to error-free representation").  Counsel's performance must be evaluated with a

high degree of deference and without the distorting effects of hindsight.  Strickland, 466

U.S. at 689.  To show counsel's performance was unreasonable, a defendant must

establish that "no competent counsel would have taken the action that his counsel did

take." Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations

omitted); <u>Chandler</u>, 218 F.3d at 1315.  When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect."  <u>Chandler</u>, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different.  <u>Strickland</u>, 466 U.S. at 694.  For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him."  <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369–70 (1993); <u>Allen v. Sec'y, Fla. Dep't of Corr.</u>, 611 F.3d 740, 754 (11th Cir. 2010).  A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  <u>Lockhart</u>, 506 U.S. at 369 (quoting <u>Strickland</u>, 466 U.S. at 687).  Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level.  <u>Glover v. United States</u>, 531 U.S. 198, 203–04 (2001).  A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance."  <u>Id.</u> at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance.  <u>Smith v. White</u>, 815 F.2d 1401, 1406–07 (11th Cir. 1987).  Bare, conclusory allegations of ineffective assistance are

insufficient to satisfy the Strickland test.   *See* Boyd v. Comm'r, Ala. Dep't of Corr., 697

F.3d 1320, 1333–34 (11th Cir. 2012); Garcia v. United States, 456 F. App'x 804, 807

(11th Cir. 2012) (citing Yeck v. Goodwin, 985 F.2d 538, 542 (11th Cir. 1993)); Wilson v.

United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551,

1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (citing

Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles and

presumptions set forth above, "the cases in which habeas petitioners can properly

prevail . . . are few and far between."   Chandler, 218 F.3d at 1313.   This is because the

test is not what the best lawyers would have done or even what most good lawyers

would have done, but rather whether some reasonable lawyer could have acted in the

circumstances as defense counsel acted.   Dingle, 480 F.3d at 1099; Williamson v.

Moore, 221 F.3d 1177, 1180 (11th Cir. 2000).   "Even if counsel's decision appears to

have been unwise in retrospect, the decision will be held to have been ineffective

assistance only if it was 'so patently unreasonable that no competent attorney would

have chosen it.'"   Dingle, 480 F.3d at 1099 (quoting Adams v. Wainwright, 709 F.2d

1443, 1445 (11th Cir. 1983)).   The Sixth Circuit has framed the question as not whether

counsel was inadequate, but rather whether counsel's performance was so manifestly

ineffective that "defeat was snatched from the hands of probable victory."   United States

v. Morrow, 977 F.2d 222, 229 (6th Cir. 1992).

Although section 2255 mandates that the court conduct an evidentiary hearing

"unless the motion and files and records conclusively show that the prisoner is entitled

to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence.  *See* Chandler v. McDonough, 471 F.3d 1360, 1363 (11th Cir. 2006) (citing Drew v. Dep't of Corr., 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); Hill v. Moore, 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief.")); Ferguson v. United States, 699 F.2d 1071, 1072 (11th Cir. 1983).  A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record.  Peoples v. Campbell, 377 F.3d 1208, 1237 (11th Cir. 2004); Tejada, 941 F.2d at 1559; Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted).  Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.  Lynn, 365 F.3d at 1239.

Ground One

Defendant first contends that counsel was constitutionally ineffective because he allowed Defendant to enter a plea before being sent for evaluation to determine his competency.  He essentially contends that he was incompetent to enter a plea in this case and asserts that he was later found to be incompetent.

In support of Defendant's assertion that the BOP found him to be incompetent, he references the transcript of a telephonic hearing held on December 14, 2009 (doc. 68).  At this hearing, counsel and the court discussed informal email correspondence

purportedly from psychologist Dr. Rick DeMier of the BOP, in which Dr. DeMier indicated that the BOP would be offering the opinion that Defendant was not competent to proceed at that time (doc. 68 at 6).  Despite this assertion, the Forensic Psychological Report, which was released less than one month later and was signed by Dr. DeMier, concluded that Defendant was and would continue to be competent to proceed and that he was feigning impairment (*id.* at 8).  Although the court and counsel expressed surprise at this conclusion in light of the prior communication from the BOP (*see* doc. 69 at 2–3), neither party challenged the conclusion of the report (*see* doc. 71 at 3–4).  In light of the ultimate finding that Defendant was found not only to be competent to proceed, but feigning incompetence (*id.* at 4; doc. 43), Defendant cannot show that he was prejudiced by counsel's failure to request a competency evaluation prior to his plea. Thus, he is not entitled to relief.

Ground Two

Defendant claims that counsel was constitutionally ineffective for his failure to object to the quantity of drugs for which Defendant was held accountable.  Defendant claims that he was improperly held accountable for drugs that were found after he was arrested and charged.

As set forth in the PSR, Defendant was arrested on March 19, 2009 after the Madison County Sheriff's Office and the Florida Department of Law Enforcement executed a search warrant at his residence (PSR at 2; PSR ¶ 9).  He was held accountable for controlled substances that were seized during the search, as well as quantities that he had sold to a confidential informant on three occasions within the

month preceding his arrest (PSR ¶¶ 7–10).  Defendant admitted at the plea colloquy

that the 81 grams of powder cocaine and 24 grams of crack[2] found at the residence

were his (doc. 38 at 13).  Defendant now claims that this was not a true admission and

that he just responded "yes" to the court's questions because he was sick and wanted

to get out of the courtroom and on medication.  The undersigned notes that even if this

were true and Defendant should have been held accountable for a lesser quantity of

powder or cocaine base, ultimately, Defendant's status as an Armed Career Criminal

under 18 U.S.C. § 924(e) drove his sentence.  The fifteen year mandatory minimum

subjected him to a sentence that trumped any lesser guidelines range that might

otherwise have applied to his controlled substance offense.[3]  He cannot show prejudice

and he is not entitled to relief.

Ground Three

Defendant next claims that counsel was constitutionally ineffective because he

allowed Defendant to plead guilty to two gun charges stemming from Defendant's

possession of the same gun.  Defendant was convicted of violations of 18 U.S.C. §§

922(g) and 924(c).  These two statutes do not punish identical conduct; each requires

---

[2]At some point the PSR was amended to reflect the quantity of drugs seized as 65.6 grams of powder cocaine and 12.3 grams of cocaine base (see PSR ¶ 10 (changes reflected in **bold**)).

[3]Counsel notes in his affidavit in opposition to Defendant's motion that had Defendant been scored as a career offender in accordance with U.S.S.G. § 4B1.1, the resultant guidelines range would have been much higher (doc. 80 at 22, 28).  Although the offense level adjustment under § 4B1.1 was not applied to him, Defendant's guidelines range was scored under a criminal history category of VI as required by this section (see PSR ¶ 48 (referencing § 4B4.1(c)((2)).

proof of different facts in order to sustain a conviction. Title 18 U.S.C. § 922(g) criminalizes possession of a firearm by an individual who is a convicted felon, regardless of the manner or context within which the weapon was possessed.  Title 18 U.S.C. § 924(c) criminalizes the possession of a firearm in furtherance of a drug trafficking crime, regardless of whether the individual in possession of the firearm was previously convicted of a felony.  Defendant's conviction of a violation of each statute, even based on the same firearm, was not constitutionally impermissible.  *See e.g.,* United States v. Broughton, 537 F. App'x 886 (11th Cir. 2013); United States v. Feaster, 394 F. App'x 561 (11th Cir. 2010); United States v. Gunn, 369 F.3d 1229 (11th Cir. 2004).  Counsel was not constitutionally ineffective for his failure to challenge the "duplicity" of the charges, as there was none.

Defendant also claims that he is actually innocent of the weapons charge, and that he thought that he was just pleading to the five grams of crack cocaine. Defendant's protestation of innocence is in direct contrast to his sworn admission at the rearraignment hearing and his post-Miranda statements to arresting agents (PSR ¶ 9). It has long been established that a defendant's statements during a Rule 11 colloquy as well as any findings made by the judge accepting the pleas constitute a formidable barrier in any subsequent collateral proceedings.  Blackledge v. Allison, 431 U.S. 63, 73–74 (1977).  Solemn declarations made under oath in open court carry a strong presumption of verity.  *Id.*; Garces v. U.S. Att'y Gen., 611 F.3d 1337, 1349 (11th Cir. 2010) (citing Blackledge); McSwain v. United States, 280 F. App'x 904, 905 (11th Cir. 2008);  United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994) (citing United

States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987)); United States v.

Thomas, 488 F. App'x 440 (11th Cir. 2012) (citing Gonzalez-Mercado).  They are

presumptively trustworthy and are considered conclusive absent compelling evidence

showing otherwise; the subsequent presentation of conclusory and contradictory

allegations does not suffice.  Blackledge, 431 U.S. at 73–74; McSwain,280 F. App'x at

905; United States v. Butt, 731 F.2d 75, 80 (1st Cir. 1984) ("[T]he presumption of

truthfulness of [defendant's] Rule 11 statements will not be overcome unless the

allegations in the § 2255 motion . . . include credible, valid reasons why a departure

from those earlier contradictory statements is now justified."); *see also* Gonzalez-

Mercado, 808 F.2d at 800 n.8 (while not insurmountable, there is a strong presumption

that statements made during a plea colloquy are true, citing Blackledge and other

cases); Downs-Morgan v. United States, 765 F.2d 1534, 1541 n. 14 (11th Cir. 1985);

Potts v. Zant, 638 F.2d 727, 750–51 (5th Cir. 1981) (citing United States v. Sanderson,

595 F.2d 1021 (5th Cir. 1979)).  Consequently, a defendant "bears a heavy burden to

show his statements [under oath] were false."  United States v. Rogers, 848 F.2d 166,

168 (11th Cir. 1988); United States v. Green, 275 F. App'x 941 (11th Cir. 2008); United

States v. Cardenas, 230 F. App'x. 933 (11th Cir. 2007).  Defendant now asserts that he

was under the influence of drugs and did not understand what counsel was saying (doc.

76 at 5).  In his response to Defendant's motion, counsel acknowledges that he was

concerned about Defendant's seeming inability to "follow" what was occurring at the

rearraignment proceedings.  However, even if the court were inclined to credit

Defendant's representations, in light of the detailed findings by the psychological

examiners at the BOP with respect to Defendant's feigning of cognitive incompetence, there was no basis for Defendant to move to withdraw his plea, and he is not entitled to relief.

Ground Four

Defendant's fourth ground relief includes numerous assertions, related only in the sense that they assail the performance of counsel.  First, Defendant asserts that counsel was constitutionally ineffective because he failed to argue that Defendant was not the only person residing in the home from which the drugs and gun were recovered. In making this argument, Defendant apparently suggests, again, that he is "actually innocent" of all the charges.  Defendant's assertion of factual innocence is foreclosed by his admissions at the plea colloquy, and further contradicted by his admission to law enforcement that he purchased the gun for protection while engaging in drug sales (PSR ¶ 9).  Even if Defendant were successful in his attempt to deflect blame for some of the drugs seized from his home to other unnamed individuals, as noted above, the fifteen year statutory mandatory sentence pursuant to the Armed Career Criminal Act would have trumped any lower guideline sentence on the controlled substance offense.

Defendant next complains that the Government did not file a motion for substantial assistance.  The plea agreement and the plea colloquy make clear that the Government did not have the obligation to file such a motion unless it deemed that Defendant's cooperation had risen to the level of substantial assistance (doc. 38 at 20–21, 26–28).  Defendant specifically stated during the plea colloquy that no one had promised to file a substantial assistance motion if he cooperated (*id.* at 28).

The decision to file a 5K1 motion is a matter of prosecutorial discretion.  United States v. Nealy, 232 F.3d 825, 831 (11th Cir. 2000); United States v. Orozco, 160 F.3d 1309, 1315 (11th Cir. 1998); United States v. Forney, 9 F.3d 1492, 1501 (11th Cir. 1993).  The government has a power, not a duty, to file such a motion when a defendant has substantially assisted.  Wade v. United States, 504 U.S. 181, 185 (1992).  Even plea agreements that require the government to consider whether the aid to the prosecution constitutes substantial assistance do not create a contractual duty to file a 5K1 motion.  Forney, 9 F.3d at 1499–1500.  Judicial review of a decision not to file a 5K1 motion is appropriate only where there is an allegation and substantial showing that the prosecution refused to file a substantial assistance motion because of a constitutionally impermissible motivation, such as race or religion.  Wade, 504 U.S. at 185–86; United States v. Dorsey, 554 F.3d 958, 961 (11th Cir. 2009); Nealy, 232 F.3d at 831.  A defendant who merely claims to have provided substantial assistance or who makes only generalized allegations of an improper motive is not entitled to a remedy or even to an evidentiary hearing.  Wade, 504 U.S. at 186.

Filing of a certification of substantial assistance generally signifies that a defendant's assistance has yielded actual, useful results, not merely that the defendant made a substantial good faith effort in his or her attempts to assist.  See United States v. Gonsalves, 121 F.3d 1416, 1419 (11th Cir. 1997) (citation omitted).  "The substantial assistance regime is not a spoils system designed simply to reward a cooperative defendant; it is designed to benefit the government in its prosecution efforts."  Orozco, 160 F.3d at 1315.  A defendant's disappointment that his or her cooperation did not rise

to the level of substantial assistance does not alone warrant a finding that the motion should have been filed.  Defendant has not shown any impropriety on the part of either his attorney or the Government with respect to the filing of a substantial assistance motion.

Defendant next claims that counsel did not ask for a "medical departure." Defendant's assertion is mistaken.  Counsel asked the court to depart pursuant to § 5H1.4 of the guidelines, a policy statement that provides in part that a defendant's physical condition may be taken into account when the court determines whether a downward departure is warranted (doc. 71 at 187).  Counsel also specifically requested that the court take Defendant's medical condition into account as it considered the § 18 U.S.C. § 3553 sentencing factors (*id.*).  The court imposed a sentence eight months below the applicable advisory guidelines range.  The fact that the court did not further depart does not render counsel's performance constitutionally ineffective, particularly in light of the fact that the court was constrained by the applicable statutory mandatory minimum.

Lastly, Defendant asserts that counsel failed to attend the pre-sentence investigation interview.  Counsel admitted at sentencing that he was not at the presentence interview (doc. 71 at 11).  Defendant does not have a constitutional right to the representation of counsel during a presentence interview by a probation officer. *See* United States v. Simpson, 904 F.2d 607, 611 (11th Cir. 1990) (declining to reach the issue, but noting that three circuits had rejected the proposition that there is a sixth amendment right to representation of counsel at a presentence interview) (citing United

States v. Jackson, 886 F.2d 838, 843–44 (7th Cir.1989); Brown v. Butler, 811 F.2d 938,

940–41 (5th Cir.1987); Baumann v. United States, 692 F.2d 565, 577–78 (9th

Cir.1982)); United States v. Washington, 11 F.3d 1510, 1517 (10th Cir.1993) ("[T]he

presentence interview is not a critical stage of the proceeding within the meaning of the

Sixth Amendment."); United States v. Hicks, 948 F.2d 877, 885 (4th Cir.1991) ("There is

no such right (to counsel) at a routine presentence interview because the presentence

interview is not a critical stage of the criminal proceedings."). A defendant cannot be

deprived of his sixth amendment right to effective assistance of counsel where there is

no constitutional right to counsel. Wainwright v. Torna, 455 U.S. 586, 587–88 (1982).

Furthermore, counsel is not required by the Federal Rules of Criminal Procedure to

attend the presentence interview.  Rule 32(c)(2) provides only that the probation officer

"must, on request, give the defendant's attorney notice and a reasonable opportunity to

attend the interview." Fed.R.Crim.P. 32(c). Counsel waived his right to be present in this

case.  Defendant has not established that counsel's performance was deficient,

constitutionally or otherwise.  Furthermore, he has not shown prejudice, as he has not

explained how the outcome of the proceedings would have been different if counsel had

been present, particularly in light of the fact that he received a below guidelines

sentence.  Defendant is not entitled to relief.

Conclusion

For all of the foregoing reasons, the court finds that Defendant has not shown

that any of the claims raised in his motion to vacate, set aside, or correct sentence

pursuant to 28 U.S.C. § 2255 have merit.  Nor has he shown that an evidentiary hearing is warranted.  Therefore Defendant's motion should be denied in its entirety.

## Certificate of Appealability

Section 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of a constitutional right.  § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of  Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.  The motion to vacate, set aside, or correct sentence (doc. 76) be **DENIED**.

2.  A certificate of appealability be **DENIED**.

At Tallahassee, Florida, this 8th day of April, 2014.


/s/ Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


**<u>NOTICE TO THE PARTIES</u>**

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**